# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CLOVER-ROANE VOLUNTEER FIRE DEPARTMENT,**
**Employer Below, Petitioner**

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-216**    (BOR Appeal No. 2058271)
(JCN: 2021010251)

**SARAH HORWICH, DEPENDENT OF MARK HORWICH (DECEASED),**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Clover-Roane Volunteer Fire Department ("Clover-Roane") appeals the September 27, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Sarah Horwich, dependent of Mark Horwich, deceased, filed a timely response.[1] Petitioner filed a timely reply. The issue on appeal is whether the Board erred in affirming the April 25, 2022, decision of the Workers' Compensation Office of Judges ("OOJ") that reversed the claim administrator's order denying Ms. Horwich's request for dependents' benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case involves the death of volunteer firefighter, Mark Horwich, on January 11, 2020. Mr. Horwich was involved in a single vehicle crash in Newton, Roane County, West Virginia as he drove a fire truck carrying water to a structure fire. The Uniform Traffic Crash Report states that the fire truck was traveling north on County Route 29 when it left the roadway to the right, traveling approximately seventy feet down the shoulder that was covered in loose dirt before striking a large boulder that was approximately three feet from the edge of the roadway. The accident report states that after that point it was unclear what control the driver had of the vehicle because the right rear axle of the truck was dislodged by the boulder. Skid marks showed that the vehicle corrected back onto the roadway before

---

[1] Petitioner is represented by Jeffrey M. Carder, Esq. Respondent is represented by Edwin H. Pancake, Esq.

1

crossing the double yellow line and completing a 180-degree slide. The vehicle then exited the roadway to the left about 120 feet from the area of initial impact with the boulder, then overturned on the steep embankment and came to rest on its top. The driver's side of the truck was on the northbound side of the roadway. According to the accident report, the crash was reported at 3:26 p.m. and the time of arrival of the reporting agency was 3:45 p.m.

The first emergency responder to arrive on the scene was George Workman of the Big Otter Volunteer Fire Department. In his statement to the reporting officer, Mr. Workman said that he was responding to a structure fire on Two Run Road when he was flagged down by some people as he got under the interstate bridge. He came upon a fire truck on its top, laying over the road bank. He radioed Clay 911 and asked them to send help. He approached the fire truck on foot and saw an arm waving out of a window. He could not access the person inside but advised him that help was on the way. The crews from Newton and Clendenin arrived. After a few minutes, Mr. Workman left the scene and went on to respond to the structure fire to deliver water. He eventually returned to the crash site.

West Virginia Chief Medical Examiner Allen Mock, M.D., performed an autopsy on Mr. Horwich on January 13, 2020. The timeline of the incident in the autopsy report states that Mr. Horwich was found trapped in the vehicle cab at 3:30 p.m. and was pronounced dead on the scene at 4:36 p.m. In the report, Dr. Mock noted Mr. Horwich's height and weight, and that he appeared somewhat younger than the reported age of 51 years. He recorded that the face and scalp were without evidence of injury, but "[f]rom the clavicles upward, the skin is deeply red-suffused. Scattered about the anterior chest, there are numerous small petechiae." Dr. Mock examined Mr. Horwich's organs and found hypertensive cardiovascular disease based on an enlarged heart and thickening of the heart walls, among other findings. The investigation section of the autopsy report stated:

> Consistent with sudden death due to likely dysrhythmia due to hypertensive cardiovascular disease, cannot exclude positional asphyxia, as a volunteer firefighter who was operating a water-carrying fire truck responding to a structure fire when he suffered a cardiac event and left the roadway where he was pinned within the cab of the vehicle.

Dr. Mock signed Mr. Horwich's death certificate on January 23, 2020. The immediate cause of death was listed as sudden death. The form also indicated that the medical examiner should sequentially list conditions, if any, leading to the cause of death. There, Dr. Mock stated that likely dysrhythmia and hypertensive cardiovascular disease were conditions leading to the cause of death. Under Part II of the form, the instructions indicate that the medical examiner should enter other significant conditions contributing to death, but not resulting in the underlying cause of death. In that section, Dr. Mock stated, "cannot exclude positional asphyxia as contributory." The description of how the injury

occurred was "volunteer fireman operating fire truck when had cardiac event and left roadway when pinned." Mr. Horwich was described as a restrained driver.

Ms. Horwich filed a claim for workers' compensation dependents' benefits after Mr. Horwich's death, asserting that he died as a result of an occupational injury. Clover-Roane retained Christopher Martin, M.D., an occupational medicine specialist, to review Mr. Horwich's medical records. Dr. Martin issued a report dated December 7, 2020, in which he concluded that Mr. Horwich suffered a cardiac event that caused his death. Dr. Martin based that opinion on the death certificate and autopsy report that listed hypertensive cardiovascular disease as the underlying cause of death. Dr. Martin explained that although Mr. Horwich did not have a documented history of high blood pressure during prior medical visits, the autopsy documented physical findings of an enlarged heart and thickening of the walls of his heart, which are both hallmarks of hypertensive cardiovascular disease. Dr. Martin opined that the statement "cannot exclude positional asphyxia as contributory" on Mr. Horwich's death certificate simply meant that positional asphyxia was not a component of the causal chain of events that directly caused his death. It was his opinion that the language "cannot exclude" used by Dr. Mock was "low probability" language. Dr. Martin further indicated that the petechiae observed on Mr. Horwich's anterior chest was not a classical sign of asphyxia like petechial hemorrhages on the conjunctivae would have been, for example. Dr. Martin stated that "[s]ince the postmortem examination does not document signs of significant trauma, positional asphyxia in this case would result from Mr. Horwitz [sic] being upside down. However, the postmortem examination does not report such signs of positional asphyxia from this position as congestion of the head, brain or facial cyanosis."

By order dated December 17, 2020, the claim administrator denied the claim for dependents' benefits, based upon Dr. Martin's findings that the cardiac event was Mr. Horwich's cause of death. Ms. Horwich protested.

During her June 21, 2021, deposition, Ms. Horwich testified that Mr. Horwich was a volunteer firefighter and training officer for Clover-Roane and was employed by the Roane County Board of Education. Ms. Horwich reported that she was paid a double indemnity payment on Mr. Horwich's life insurance policy because it was determined that he died in an accident.

Ms. Horwich testified that her knowledge regarding the accident was obtained from members of the fire and rescue squads on the scene, the accident report, and information from the medical examiner's office. She believed that the accident may have been caused when the firetruck's rear axle broke, causing the vehicle to do a 180-degree turn, sink into the soft dirt on the side of the road, and roll over onto its roof. She testified that her husband was then trapped in the truck for about an hour and one-half after the accident while a neighboring fire department attempted to extract him. She understood that Mr. Workman gave a statement to the police that he saw Mr. Horwich waving his arm out the window of

3

the fire truck when he arrived but noted that she was told later by other firefighters that Mr. Horwich was deceased by the time they arrived on the scene. She stated that Dr. Martin never spoke to her to ask her about her husband's health and that Mr. Horwich had no cardiac issues prior to his death, other than a prescription for cholesterol medication. She testified that her husband was in good health and had been recently cleared for an upcoming medical procedure.

By decision dated April 25, 2022, the OOJ reversed the claim administrator's denial of benefits. The OOJ found that the medical evidence was insufficient to show that Mr. Horwich's hypertensive cardiovascular disease, the underlying cause of death which resulted in a dysrhythmia, caused Mr. Horwich to have the motor vehicle accident. The OOJ found that there was evidence of equal weight concerning whether Mr. Horwich's heart condition that caused his death occurred before the fire truck ran off the road and started the chain of events which led to the rollover accident, or whether his heart condition resulted in his death after the accident occurred.

The OOJ noted that Dr. Martin's report assumed that the cardiac event and dysrhythmia caused the crash and indicated that Dr. Martin did not agree that there was a contributory cause of positional asphyxia. However, Dr. Mock's death certificate specifically stated, "cannot exclude positional asphyxia as contributory." Therefore, the OOJ made a finding that there was an equal amount of evidentiary weight as to whether positional asphyxia was contributory. Based upon the preponderance of the evidence, the OOJ concluded that Mr. Horwich was performing his duties by operating the fire truck in response to a fire on January 11, 2020, had a rollover accident in the firetruck and became trapped inside in an upside-down position, and died as a result of his employment. The OOJ further concluded that the preponderance of the evidence did not show that Mr. Horwich had a heart attack before the accident, but if it were assumed that he did have a heart attack which caused him to have the accident, then the evidence showed that positional asphyxia may have contributed to his death. Accordingly, the OOJ reversed the claim administrator's order and ordered that Ms. Horwich be granted dependents' benefits. Clover-Roane appealed the decision. By order dated September 27, 2022, the Board affirmed the OOJ's decision. It is from this order that Clover-Roane now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1)     In violation of statutory provisions;

4

(2)     In excess of the statutory authority or jurisdiction of the Board of Review;

(3)     Made upon unlawful procedures;

(4)     Affected by other error of law;

(5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, __ W. Va. __, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Clover-Roane argues that the Board was clearly wrong in affirming the OOJ's decision because the evidence demonstrates that Mr. Horwich died of a sudden cardiac event that caused him to veer off the roadway. Clover-Roane points to Dr. Mock's language in the death certificate and autopsy report where he identifies the cause of death as sudden death due to or as a consequence of dysrhythmia and hypertensive cardiovascular disease, and to Dr. Martin's report which confirms Dr. Mock's opinions. Clover-Roane asserts that this cause of death was not related to Mr. Horwich's employment and is a bar to Ms. Horwich's recovery of dependents' benefits. According to Clover-Roane, the OOJ and the Board incorrectly interpreted the meaning of certain words in the death certificate related to contributory conditions and positional asphyxia, and the OOJ improperly rejected the medical findings of Dr. Mock and Dr. Martin and replaced them with that of its own.

Upon review, we find no reversible error in the Board's decision affirming the OOJ. Pursuant to our statutory standard of review, this Court may only reverse the Board in a limited set of circumstances.[2] Clover-Roane seeks a reversal on the basis that the lower tribunals were clearly wrong in view of the evidence. However, we do not find such circumstances present here. The OOJ, in its role as factfinder, properly weighed the probative and reliable evidence, including the reports by Dr. Mock and Dr. Martin, and concluded that there was not sufficient evidence to show that Mr. Horwich suffered a heart attack that caused the accident, to the exclusion of the possibility that the accident occurred first in time, and then Mr. Horwich's heart condition caused his death sometime later. The OOJ also weighed the evidence regarding positional asphyxia as a contributing cause of death, including Dr. Mock's findings and Dr. Martin's characterization of these findings. The OOJ found that there was an equal amount of evidentiary weight as to whether

---

[2] Our review is deferential to the Board. West Virginia Code § 23-5-12a(b) sets forth the same standard of review as was previously required of the Board when it reviewed decisions by the Office of Judges per West Virginia Code § 23-5-12 before the 2021 statutory amendments became effective. In considering West Virginia Code § 23-5-12, the Supreme Court of Appeals of West Virginia stated that the Board was required to accord deference to the decisions by the Office of Judges. *Conley v. Workers' Comp. Div.*, 199 W. Va. 196, 203, 483 S.E.2d 542, 549 (1997).

positional asphyxia was contributory. The OOJ observed that if, after weighing all of the evidence regarding an issue, there is a finding that an equal amount of evidentiary weight exists for each side, the resolution that is most consistent with the claimant's position will be adopted, pursuant to West Virginia Code § 23-4-1g (2003). Thereafter, the Board affirmed the OOJ's order, adopting the same findings of fact and conclusions of law. Clover-Roane has not made a showing that the Board's affirmance is clearly wrong. Therefore, we must affirm.

Accordingly, we affirm the Board's September 27, 2022, order.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen